# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Hot Springs Division

| | |
|---|---|
| In the Matter of the Search of:<br>The Premises Located at 113 Live Oak Drive, Hot Springs, Garland County, Arkansas | No. 6:19cm2<br><br>**Filed Under Seal** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*:

**The premises located at 113 Live Oak Drive, Hot Springs, Garland County, Arkansas, including the residence and all outbuildings and vehicles found thereon, as depicted and/or described in "Attachment A"**

located in the Western District of Arkansas there is now concealed *(identify the person or describe the property to be seized)*:

See "Attachment B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 42 U.S.C. § 408(a)(4) | Concealment of Material Facts |
| 18 U.S.C. § 1001 | False Statements |
| 18 U.S.C. § 641 | Theft of Government Funds |

The application is based on these facts:   See attached affidavit of SA Charles Briscoe, SSA-OIG.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
SA Charles Briscoe, Social Security Administration, OIG
*Affiant*

Sworn to before me and signed in my presence.

Date: 2-5-19 @ 1:44 pm

_____
*Judge's signature*

City and state:   Texarkana, Arkansas        Barry A. Bryant, United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Charles Briscoe, a special agent with the Office of the Inspector General – Social Security Administration, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant has been employed as a special agent with the Office of the Inspector General – Social Security Administration – since November of 2009. Prior to your Affiant's employment with the Office of the Inspector General, he was employed as a special agent with the United States Secret Service for 8 years.

2. While being employed with the United States Secret Service and the Office of the Inspector General, your Affiant has attended extensive training pertaining to crimes involving financial fraud associated with money laundering, bank fraud, embezzlement, concealment of material facts, false statements, identity theft, fraud associated with identification documents, access device fraud, mail fraud, forgery, and Social Security fraud at the Federal Law Enforcement Training Center, the United States Secret Service JJRTC facility, as well as the Inspector General Criminal Investigators Academy. Since his employment, your Affiant has also received additional training pertaining to the aforementioned criminal activities from various law enforcement training sessions. During his employment, your Affiant has further gained experience in working multiple complex criminal cases involving these matters, both pertaining to state and federal violations.

### IDENTIFICATION OF PREMISES TO BE SEARCHED

3. This affidavit is being submitted in support of an application for a warrant to search the premises located at 113 Live Oak Drive, Hot Springs, Arkansas, including the residence and any outbuildings and/or vehicles situated or found thereon, which premises are further described and depicted in Attachment A (referred to hereinafter as the "**SUBJECT PREMISES**"). Your Affiant believes that evidence pertaining to the below listed violations is currently located at the **SUBJECT PREMISES**.

4. The facts of this investigation dictate that the suspect has concealed his self-employment activities, including "substantial gainful activities" as that term is described below, and provided false statements to the Social Security Administration (hereinafter "SSA") in order to receive Title 2 Disability Insurance Benefits. From my extensive training and experience in the investigation of Social Security-related crimes, I have learned that people who use their residence for self-employment activities commonly accumulate business records there which can be of significant evidentiary value. Those records commonly include information stored on cellular phones, computers and other digital and/or electronic devices, as well as physical documents such

as advertising materials, log books, schedules, planners, customer contact information, financial documents and records, bank statements, business checkbooks, business check stubs, business checks, receipts, invoices, and documents associated with items used to conduct such self-employment activities. I have also learned that people who use their residence for self-employment activities commonly keep business-related items, materials, and documents in vehicles and outbuildings located on the same premises. Therefore, your Affiant reasonably believes that such evidence may be located in vehicles and outbuildings located on the **SUBJECT PREMISES,** in addition to the residence located there.

### IDENTIFICATION OF THE ITEMS TO BE SEIZED AND EXAMINED

5. The items to be searched for include evidence of Social Security fraud, specifically, Title 42, U.S.C. § 408(a)(4) (Concealment of Material Facts), Title 18, U.S.C. § 1001 (False Statements), and Title 18, U.S.C. § 641 (Theft of Government Funds). Specific items to be seized are further described in Attachment B.

### TITLE II: SSA DISABILITY INSURANCE BENEFITS

6. Title II Disability Insurance benefits are paid under a social insurance program administered by the Social Security Administration. Payments under this program are commonly known as "Social Security benefits." To be eligible for Social Security benefits, a person must be unable to engage in "substantial gainful activity," often referred to as "SGA." A person who is earning more than a certain monthly amount (net of impairment-related work expenses) is ordinarily considered to be engaging in SGA. Another factor that affects SGA is the number of work hours a person performed per month. For 2018, the SGA amount for non-blind individuals is $1,180 or more per month. SGA amounts generally change with changes in the national average wage index. Federal law requires the beneficiary to report any work activity and/or medical improvement to the SSA.

### PROBABLE CAUSE

7. This investigation involves Ron Lyle Hawley (known herein after as HAWLEY), a Title II beneficiary, and his scheme to defraud the Social Security Administration. HAWLEY is known to reside at 113 Live Oak Drive, Hot Springs, AR, in the Western District of Arkansas, because he has provided that address to SSA as his residential address. HAWLEY also listed the **SUBJECT PREMISES** as his residential address with Arvest Bank when he opened the checking account described herein in March of 2013, and again when he obtained the January 2014 loan described herein. His current customer profile information with Arvest Bank also shows the **SUBJECT PREMISES** as his residential address. Your Affiant has discovered that HAWLEY obtained a new Arkansas drivers license on June 26, 2018, listing the **SUBJECT PREMISES** as his residential address. He has listed the **SUBJECT PREMISES** as his

residential address on every Arkansas drivers license issued to him since 2006. Additionally, your Affiant has confirmed with the Arkansas Game and Fish Commission that the current residential address of Ron HAWLEY, associated with the hunting and fishing records discussed herein, is the **SUBJECT PREMISES.** Furthermore, the **SUBJECT PREMISES** is used as his residential address for the registration of his commercial fishing boat (last registered March 2017) and his truck (last registered March 2018) with the State of Arkansas. On October 22, 2018, your Affiant conducted a surveillance of the **SUBJECT PREMISES** and observed a fishing boat and a vehicle registered to HAWLEY parked on the property.

8. In August of 2000, HAWLEY was approved by the SSA to receive disability benefits for alleged medical impairments associated with a spinal cord injury. HAWLEY initially applied in 1999, but was denied after the SSA reviews his medical records. His approval was based on a filing of a reconsideration request. During the application and reconsideration phases, HAWLEY continuously reported he was partially paralyzed and had severe limitations with the use of his hands. HAWLEY reported he could not tie his shoes, fasten buttons, and put on socks. He could not hold or lift objects such as an iron or rake. HAWLEY reported he could not lift heavy objects, walk long distances, and cannot bend. He further reported he must rest 2 hours a day and experienced pain in both hands, which was continuous and constant.

9. In or around 2003, HAWLEY began to operate a professional fishing guide service in the Hot Springs, Arkansas, area. As the central element of that service, Hawley personally escorts paying clients on fishing excursions on Hot Springs area lakes. This information was developed from statements and content posted by HAWLEY on social media sites, statements that HAWLEY has made on financial loan documents, and statements he made to your Affiant during a recent undercover operation (details provided chronologically below). Under federal law, HAWLEY is required to report any work activity, such as his work as a professional fishing guide, to the SSA. A review of SSA records has produced no evidence that HAWLEY has ever reported that work activity to the SSA.

10. Records from the Arkansas Game and Fish Commission (AGFC) reveal that HAWLEY has consistently purchased hunting and fishing licenses, to include an annual resident fishing license, trout permits, an annual resident hunting (sportsman license), state and federal waterfowl hunting stamps, and an annual fishing guide license, since at least 2007. Due to a change of databases, records were retrieved only going back to 2007. An ability to engage in common aspects of the licensed activities would directly controvert HAWLEY's medical claims to SSA. Under Arkansas state law, a resident who guides, aids or assists another person for pay or other consideration in the taking of fish must purchase the fishing guide license. The issued license is only good for a one-year period, thus requiring those involved in a paid guide service to obtain new guide licenses every year if they continue to work as such. According to AGFC records, HAWLEY has purchased a guide license every year since at least 2007, and currently

maintains a valid guide license, which expires May of 2019.

11. On November 4, 2007, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags).

12. On December 20, 2007, HAWLEY purchased a Trout Permit from the AGFC.

13. On April 4, 2008, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags).

14. On April 11, 2008, HAWLEY purchased a Trout Permit from the AGFC.

15. On May 5, 2008, HAWLEY purchased a Resident Fishing Guide License from the AGFC.

16. On October 17, 2008, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags).

17. On December 11, 2008, HAWLEY purchased state and federal waterfowl stamps, allowing him to legally hunt migratory waterfowl.

18. On February 08, 2009, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags) and a Trout Permit.

19. On May 4, 2009, HAWLEY purchased a Resident Fishing Guide License from the AGFC.

20. On October 18, 2009, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags). HAWLEY killed a deer in November using this license and reported it to the AGFC.

21. On January 3, 2010, HAWLEY purchased state and federal waterfowl stamps, allowing him to legally hunt migratory waterfowl.

22. On May 2, 2010, HAWLEY purchased a Resident Fishing Guide License from the AGFC.

23. On November 8, 2010, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags). HAWLEY killed a deer in December with the license and reported it to the AGFC.

24. On May 5, 2011, HAWLEY purchased a Resident Fishing Guide License from the AGFC.

25. On October 29, 2011, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags). HAWLEY killed two deer in December with this license and reported them to the AGFC.

26. On April 30, 2012, HAWLEY purchased a Resident Fishing Guide License from the AGFC.

27. On August 31, 2012, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags).

28. Records obtained by subpoena revealed an Arvest Bank account that HAWLEY has utilized for his fishing business. The records show that on March 26, 2013, HAWLEY opened the checking account. Although this account was not opened as a "Commercial Checking Account", HAWLEY has utilized it for transactions associated with his professional fishing guide service. He also had his SSA benefits deposited into this Arvest account. Between March 2014 and December 2017, numerous check and cash deposits for payments associated with Hawley's professional fishing guide service have been made into this Arvest account. The payments were known to be related to his business because some of the checks bear remarks referencing his fishing guide service. The typical cash deposit amounts ranged between $500 and $700.

29. On May 7, 2013, HAWLEY purchased a Resident Fishing Guide License from the AGFC.

30. On August 31, 2013, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags). HAWLEY killed a deer in November using this license and reported it to the AGFC.

31. Subpoenaed records also revealed that on January 30, 2014, HAWLEY obtained a commercial loan from Arvest Bank. The loan, in the amount of $40,065.35, was obtained in order to purchase a fishing boat for his business. Under the "Customer Information" section, HAWLEY is listed as self-employed for 10 years (this supports the information that his business began in or around 2003 as noted above in Paragraph 9).

On the "Short Form", the purpose notes: "Mr. Hawley is purchasing a new boat for his fishing guide business". Primary source of repayment is listed as "Business Income". Under the "Financial Information" section, HAWLEY lists his net income for 2013 was $37,500. The "Loan Policy Exceptions" section notes the following: "Due to Mr. Hawley being on disability for the last several years, he was not required to file taxes. Mr. Hawley will no longer be receiving disability due to his increased income from his guide service. We are waiving his requirement for last 3 years of taxes based off of this, credit score, DCR, and LTV". The loan was used to purchase a 2014 2400 Blazer Bay Fishing Boat ($18,600), a 2014 Suzuki DF250 250 Horsepower Outboard Motor ($16,500), and a 2014 Magic Tilt 2400 Tandem Trailer ($3,960). This loan was approved and confirmation has been made that the boat, trailer, and motor he currently uses matches the description of the items outlined in the loan documents. These items are currently registered to HAWLEY with the Arkansas Department of Motor Vehicles.

32. On May 4, 2014, purchased a Resident Fishing Guide License from the AGFC.

33. On September 10, 2014, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags). HAWLEY killed a deer in November using this license and reported it to AGFC.

34. On May 3, 2015, HAWLEY purchased a Resident Fishing Guide License from the AGFC.

35. On July 6, 2015, HAWLEY purchased a Trout Permit from the AGFC.

36. On November 4, 2015, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags). HAWLEY killed a deer in December using this license and reported it to the AGFC.

37. On May 03, 2016, HAWLEY purchased a Resident Fishing Guide License from the AGFC.

38. On November 1, 2016, HAWLEY purchased a Resident Fishing License from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags). HAWLEY killed and a deer in November and December using this license and reported them to the AGFC.

39. On April 26, 2017, HAWLEY purchased a Resident Fishing Guide License from the AGFC.

40. On November 1, 2017, HAWLEY purchased a Resident Fishing License

from the AGFC, as well as a Resident Sportsman License (hunting license that includes deer and turkey tags). HAWLEY killed a deer in November and December using this license and reported them to the AGFC.

41. On May 3, 2018, HAWLEY purchased a Resident Fishing Guide License from the AGFC.

42. On July 18, 2018, HAWLEY purchased a Resident Fishing License from the AGFC.

43. On August 26, 2018, HAWLEY completed SSA form titled, "Continuing Disability Review Report". This form had been mailed to the address of the **SUBJECT PREMISES** for HAWLEY to complete. When asked to list physical and/or mental conditions that limit his ability to work, he responds, "partial quadraplegic (sic) from my neck injury. Take antidepressant for mood swings". Under the Daily Activities section, HAWLEY claims he wakes up at 6:30, walks around the block, eats breakfast, watches tv. He reports he does not have any hobbies or interests. He further reports that his condition affects his ability to do chores (because his fingers don't properly function), lift objects, and use hands and fingers. Under the Work section, HAWLEY claims he has not worked since his disability decision.

44. On September 17, 2018, your Affiant made contact by telephone with HAWLEY, in an attempt to book a fishing trip. The call was made to his business cell phone that was obtained from his company website (maddogstripers.com). Upon confirming that your Affiant was speaking to HAWLEY himself, HAWLEY advised that he was currently "bush hogging" and would have to provide your Affiant with open fishing dates when he returned to his home, indicating he kept his business schedule at the **SUBJECT PREMISES**. Later in the day, HAWLEY confirmed that your Affiant was booked for a fishing trip with Hawley's guide service on October 23, 2018. HAWLEY did so by communicating via text messages from the same business cell phone.

45. On October 22, 2018, your Affiant conducted drive-by surveillances of the **SUBJECT PREMISES** and observed HAWLEY'S commercial fishing boat parked at a storage facility in the rear of the property, along with his registered truck he uses to haul his boat.

46. On October 23, 2018, your Affiant, acting in an undercover capacity, utilized HAWLEY's professional fishing guide services, as scheduled. This undercover operation took place on Lake Ouachita in Garland County, Arkansas. HAWLEY was observed operating a 2015 Ford F250 Platinum crew cab truck, hauling his commercial fishing boat, when your Affiant first met HAWLEY. Throughout the fishing guide service, which lasted approximately seven (7) hours, HAWLEY was observed to be very physically active. He was able to climb, bend, pull, stretch, and kneel in various

positions and stood nearly the entire time, with the exception of leaning against a seat for short periods. He was observed in various stages of digital and gross manipulation with his hands and fingers while conducting numerous activities, to include preparing fishing rods, baiting small hooks, conducting maintenance on his trolling motor, and tying on fishing hooks with thin monofilament line. HAWLEY advised your Affiant he has worked in the area as a fishing guide for sixteen (16) years (further corroborating that his business began around 2003). He also advised your Affiant that he maintains his bookings in a record book that he keeps at his residence and that he was fortunate he does so because he has replaced a couple of phones this year and would have lost the information if he kept the schedules in his phone. HAWLEY added that he uses his phone to take photos of customers and their fish and uploads the pictures to promote his business on social media. HAWLEY also advised your Affiant that he buys live baitfish, approximately 400 baitfish at one time, and uses a 400 gallon tank to transport the bait from Lonoke, Arkansas. He stated he keeps them alive in large bait box located at his residence.

47. On October 28, 2018, HAWLEY completed and returned an SSA form titled, "Function Report". This form had been sent to HAWLEY at the address of the **SUBJECT PREMISES**. On the completed report, HAWLEY advises he has weak fingers due to a neck injury. He reports his daily activities include waking up "around 7" and trying to do find something to do in the shop or yard, eating a sandwich, taking a nap, and trying to find other chores to do until dinner. When asked what he could do before his injury that he cannot do know, HAWLEY claims he was able to handle any physical labor such as heavy lifting and being on his feet all day. Although he reports his social activities include fishing and hunting a couple of times a week, he further claims he cannot stay one position very long and that his condition affects his ability to lift, stand, walk, sit, kneel, squat, reach, use hands, bend, and complete tasks.

48. Upon conducting open-source social media searches, your Affiant has discovered several digital footprints that reveal evidence of HAWLEY'S activities that he has concealed from the SSA. The following is a summary of the social media analysis:

- A Facebook account was created for HAWLEY's professional fishing guide service in February of 2018. The page for that business account remain publicly visible at https://www.facebook.com/Mad-Dog-Striper-Fishing-330445557475803. The public portions of that business page contain numerous photographs of customers posing with fish. Some comments posted by viewers of that business page specifically address HAWLEY by name. The business page lists HAWLEY as a "Team Member" and includes a link to HAWLEY's personal Facebook page. From my previous in-person contact with HAWLEY, I recognize the person shown in the "profile" photograph on that personal Facebook page as HAWLEY. Included in the contact information listed on HAWLEY's business Facebook account are the phone number I used to contact HAWLEY, as discussed above, and a link to HAWLEY's guide service's web page

(http://maddogstripers.com).

- As noted above, a personal Facebook account belonging to HAWLEY was also discovered. I recognize the person depicted in that personal Facebook page's "profile" picture as HAWLEY. HAWLEY'S personal Facebook page remains publicly visible at https://www.facebook.com/profile.php?id=100004279575637. The publicly visible portions of that page reveal that HAWLEY has worked at Ron Hawley's Striper Guide Service from 2003 to the present. They also show various photos of clients with fish. As on his business Facebook page, user comments on HAWLEY's personal Facebook page also refer to HAWLEY's guide services. Additionally, HAWLEY is described as a fishing charter captain.

- Your Affiant has also viewed HAWLEY'S guide service's web page, publicly accessible at https://maddogstripers.com. The home page depicts HAWLEY holding a large striper with a captions that reads, "Don't miss the opportunity to fish and enjoy the beautiful waters of Lake Ouachita with Ron Hawley aboard the 24' Blazer Bay "Mad Dog". Ron has been a striper guide fishing for over 15 years" (further supporting that his business venture began in 2003). Furthermore, the site lists his going rates for the guide service. The site boasts, "Ron will fish in the rain or shine so check the weather and dress appropriately".

- Your Affiant has also found several other online references to HAWLEY's professional fishing guide services, one of which remains visible at www.lake-ouachita.com/fishing-guides. On that site, a fishing guide list states that HAWLEY has been a guide on Lake Ouachita for over 10 years. At a separate site, http://Hotspringsar.info/fishing.html, HAWLEY is also listed as a Lake Ouachita fishing guide.

49. Your affiant has obtained and reviewed relevant business records of cellular service provider Verizon Wireless. From those records, I have learned that Verizon is the current cellular service provider for the cell phone number I obtained from HAWLEY's guide service website (maddogstripers.com), and which I used to contact HAWLEY. Those records also show that HAWLEY is the listed subscriber for that number, which was activated on May 16, 2003. Verizon's records also show HAWLEY's mailing address as 113 Live Oak Drive, Hot Springs, Arkansas, which is the address of the **SUBJECT PREMISES.**

50. Based on the foregoing, there is probable cause to believe that on the **SUBJECT PREMISES** there is currently concealed evidence of the above-described violations of federal criminal law, as described in Attachment B.

51. Your Affiant asserts that the information contained in this affidavit is not all the facts developed during this investigation, but is sufficient information for probable cause to obtain a warrant to seize and search the **SUBJECT PREMISES**, including the

residence and any vehicles and outbuildings located thereon.

Further your Affiant sayeth not.

_____
Charles M. Briscoe, Special Agent
SSA/OIG

Sworn and subscribed to me this  5th  day of  February , 20___.

_____
Hon. Barry A. Bryant
Chief U.S. Magistrate Judge
Western District of Arkansas

## ATTACHMENT A

The premises to be searched is located at 113 Live Oak Drive, Hot Springs, Garland County, Arkansas, and is further described as follows: A residential property which contains a brown brick, one-story residence with a light-brown colored shingled roof, and dark brown trim on the eaves, window shutters, and front door. The front of the residence faces west. The property also contains a single story storage facility/shop building in the rear section of the yard. That storage facility/shop building has what appears to be light brown siding and contains two large white garage doors that face west. An additional, single story structure is located just behind the residence. It is unknown if this structure is connected to the primary residence. The color of that structure bears resemblance to the color of the primary residence, but the majority of it is obstructed from view by the above-described residence. This premises has been identified as the residence of Ron Hawley (DOB: 11/11/75).

In addition to the residence located on the premises to be search, this search warrant authorizes the search of all outbuildings on the premises, including the above-described storage facility/shop building, and any vehicles found on the premises.

The following is a photo of the residence and storage facility/shop building located on the premises to be searched:



## ATTACHMENT B

The items to be seized include any and all evidence and instrumentalities of violations of Title 42, U.S.C. § 408(a)(4) (Concealment of Material Facts), Title 18, U.S.C. § 1001 (False Statements), and Title 18, U.S.C. § 641 (Theft of Government Funds) by Ron Hawley (DOB: 11/11/75) and/or others.

Such items include, but are not limited to, all records, documents, paperwork, publications, information or other materials relevant to any self-employment activity and/or substantial gainful activity engaged in by Ron Hawley (DOB: 11/11/75) during any period pertinent to his receipt of, or application for, social security disability benefits, including advertising materials, log books, schedules, planners, customer contact information, financial documents and records, bank statements, business checkbooks, business check stubs, business checks, receipts, invoices, and documents associated with items used to conduct any such self-employment activity and/or substantial gainful activity.

Such items also include any cellular phones, computers or other digital and/or electronic devices capable of storing any or all of the above-described records, documents, paperwork, publications, information or materials.